IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRIC OF COLUMBIA

| | |
|---|---|
| TIMMY L. THORNTON<br>4222 Columbia Pike<br>Apt. #1<br>Arlington, VA 22204<br><br>v.<br><br>CHRISTINE E. WORMUTH,<br>in her official capacity as the<br>Secretary of the Army<br>101 Army Pentagon<br>Washington, DC 20310-0101 | CASE NO. _____ |

# COMPLAINT

**(APA Review of Final Decision of the Army Board for Correction of Military Records)**

## I. INTRODUCTION

This action seeks judicial review of a final agency decision by an Acting Deputy Assistant Secretary of the Army (Review Boards) (DASA(RB)) to reject a unanimous recommendation of the Army Board for Correction of Military Records (ABCMR). A former officer of the United States Army with 18 years of active-duty service, Plaintiff applied to the ABCMR challenging the allegations that led to his active-duty separation and adverse discharge characterization. After considering the merits of Plaintiff's application, the ABCMR unanimously determined that an error or injustice existed in Plaintiff's record and recommended full relief that included retroactive service credit sufficient to entitle Plaintiff to a 20-year retirement. The Acting DASA(RB) subsequently rejected the ABCMR's unanimous recommendation under the guise of granting partial relief, directing only a change to Plaintiff's discharge characterization. The Acting DASA(RB)'s denial of full relief is unlawful because it is

1

devoid of any reasoning sufficient to satisfy the decision-making demands of the Administrative Procedure Act (APA) and federal regulations.

## II.  JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. Plaintiff raises claims under federal statutes, federal regulations and Department of the Army regulations.

2. The Act of Congress upon which federal question jurisdiction rests is 10 U.S.C. § 1552 which authorizes and governs the ABCMR. Under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, the Court may set aside final agency decisions that are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law or mandatory procedure.

3. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

4. Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

## III. THE PARTIES

5. Plaintiff, Timmy L. Thornton, is a United States citizen and a former member of the United States Army. He resides at the address provided in the caption above.

6. Defendant, Christine E. Wormuth, is the Secretary of the Army. She is the head of the Department of the Army. Her official residence is address provided in the caption above. The ABCMR and DASA(RB) act on behalf of the Secretary of the Army.

## IV. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On July 13, 2020, the ABCMR issued its record of proceedings in **Docket Number AR20200001406**, granting full relief to Plaintiff.

8. On June 9, 2021, the Acting DASA(RB) issued a memorandum granting partial relief on Plaintiff's application and rejecting the ABCMR's unanimous recommendation for full relief.

9. The Acting DASA(RB)'s decision is final agency action under the APA.

10. Plaintiff has exhausted his administrative remedies and this matter is ripe for judicial review.

11. Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of accrual.

12. Plaintiff's claims accrued on June 9, 2021 when the Acting DASA(RB) issued a final agency decision rejecting the ABCMR's recommendations.

13. Plaintiff's claims are timely before this Court.

## V. FACTS

14. Plaintiff enlisted in the Army in February 1983 and served approximately nine years and seven months on active duty as an enlisted member before being honorably discharged on August 21, 1992 as a staff sergeant (E-3) for the purpose of accepting a commission as an officer in the U.S. Army Reserve.

15. On August 25, 1992, Plaintiff was ordered to active duty in the rank of second lieutenant (O-2).

16. Plaintiff was promoted to the rank of captain (O-3) effective October 1, 1996.

17. Plaintiff served on active duty until his separation on February 2, 2001.

18. When Plaintiff was separated in 2001, he had accrued 18 years of active-duty service.

19. In April 1983, Plaintiff married a woman (referred in the ABCMR record of proceedings as "DDT" or "Mrs. 'T'").

20. In or about August 1998, Plaintiff sought a divorce from DDT. To do so, he purchased a *pro se* divorce kit for non-contested divorces, completed his portion, and sent it to DDT for her to complete and file with the court. However, DDT did not complete her portion of the divorce documentation and would later testify at a Uniform Code of Military Justice (UCMJ) Article 32 proceeding that she told Plaintiff she had "taken care" of filing the documents and led him to believe that they were divorced.

21. In September 1998, Plaintiff met a second woman (referred to by the ABCMR as "SY", "SM" or "SYM") and the two married in December 1998.

22. On May 26, 2000, the Friday before Memorial Day weekend, Plaintiff arrived and signed into his new assignment at the Military District of Washington, DC.

23. On or about May 27, 2000, through a series of events, SYM contacted DDT and DDT informed SYM that she and Plaintiff had been married for 17 years and were not divorced.

24. On or about May 30, 2000 (the first available business day after May 27, 2000), Plaintiff and SYM went to a local courthouse to get an application for an annulment.

25. Plaintiff also sought leave from his chain of command to travel to DDT's location in Florida to petition for a divorce. Plaintiff was told his leave request was "good to go" so he proceeded to travel to Florida.

26. Meantime, SYM reported Plaintiff to local military security police and thereafter the Army Criminal Investigation Division (Army CID) opened an investigation into the matter.

27. During the investigation, Plaintiff gave sworn statements attesting to his belief that he and DDT were divorced before he married SYM.

28. DDT also gave a sworn statement to Army CID stating that she recalled Plaintiff asking if she had filed the divorce papers and that she answered yes.

4

29.     On September 7, 2000, Plaintiff was charged with violations of UCMJ Articles 134 (general articles) and 107 (false official statements) relating to allegations that he had committed bigamy by intentionally marrying a second woman while still being married to another woman. He was further charged with violations of Articles 86 (absent without leave), 90 (disobeying a superior officer) and 107 (false official statements) related to allegations he was absent without leave (AWOL) and disobeyed an order from a superior officer when he traveled to Florida to initiate divorce proceedings with DDT.

30.     On November 1, 2000, the Army convened a UCMJ Article 32(b) preliminary hearing, in relevant part, to determine whether there was probable cause to believe Plaintiff had committed the offenses charged.

31.     At the hearing, SYM testified that while they were dating, Plaintiff stated he was divorced for about four or five years and after they later married, she found out he was still married to DDT for 17 years.

32.     DDT testified that Plaintiff had given her divorce paperwork, and she gave him the impression the paperwork had been filed and the proceedings had taken place when he asked if she had taken care of it.

33.     At the culmination of the Article 32 proceedings, the investigating officer recommended dismissal of the charges related to allegations he was AWOL but did not recommend dismissal of the remaining charges. He recommended a general court-martial.

34.     On December 12, 2000, Plaintiff submitted a resignation for the good of the service in lieu of court-martial.

35.     Plaintiff's command recommended approval of Plaintiff's resignation with an adverse "under other than honorable conditions" (UOTHC) discharge characterization. The recommendation was approved on or about December 9, 2000.

36.     Plaintiff was discharged on February 2, 2001 with a UOTHC characterization of service.

37.     On or about October 25, 2019, Plaintiff applied to the ABCMR through previous counsel. His application materials included a supporting memorandum that asserted various arguments for relief, and exhibits.

38.     The ABCMR is governed by 10 U.S.C. § 1552 which states that "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice" and that "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."

39.     The ABCMR's procedures are set forth in 32 C.F.R. § 581.3, which provides that ABCMR board members will "[r]eview all applications that are properly before them to determine the existence of error or injustice [and] [i]f persuaded that material error or injustice exists, and that sufficient evidence exists on the record, direct or recommend changes in military records to correct the error or injustice." 32 C.F.R. §§ 581.3(b)(4)(i),(ii).

40.     Plaintiff's memorandum argued that, contrary to his command's allegation, Plaintiff was not guilty of bigamy because DDT had led him to believe that she had finalized their divorce when Plaintiff married his second wife and he had no intention or reason to be married to two women at the same time.

41.     In support of this argument, the memorandum cited evidence that Plaintiff believed he was divorced from DDT and that DDT, in sworn statements and Article 32 testimony, stated that she led Plaintiff to believe that the divorce proceedings had taken place.

42.     The memorandum further argued that the allegation that Plaintiff absented himself from his unit without authority was contradicted by the evidence including by the officer who conducted the Article 32 hearing who determined that Plaintiff had legitimate reason to believe his leave had been approved.

43.     In support of this argument, the memorandum cited Article 32 testimony from Plaintiff's rater who stated that he had informed Plaintiff he was "good to go" on leave but that his leave ultimate was not approved by the company commander, which Plaintiff did not know until he was already in Florida. The memorandum detailed Plaintiff's efforts to immediately return to Washington, D.C. area once he learned his leave had not been approved and described other actions that the memorandum argued were inconsistent with someone who intended to go AWOL.

44.     Plaintiff's memorandum next argued that the allegations of false statements all related to the marriage-related issues at the core of the matter and that Plaintiff had no intent to deceive anyone and did not believe the statements for which he was charged were false. The memorandum asserted that Plaintiff truly believed his first marriage had ended in divorce and that he did not know that his leave request had not been approved. The memorandum stated that Plaintiff had completed certain financial forms in 1999 and 2000 to ensure that his second wife was receiving financial support.

45.     The memorandum further argued that Plaintiff's overall outstanding service record and post-military career counseled in favor of granting relief.

46. On or about August 25, 2020, the ABCMR considered Plaintiff's application.

47. The ABCMR's analysis of the case is contained in a record of proceedings that listed all evidence considered, described Plaintiff's application, and detailed the relevant facts of the case from evidence derived from Plaintiff's submitted materials and his official military personnel file.

48. The ABCMR further considered relevant authority, including a controlling guidance issued by Robert Wilkie, Under Secretary of Defense for Personnel and Readiness on July 25, 2018 entitled "Military Discharge Review Boards and Boards for Correction of Military/Naval Records (BCM/NRs) regarding equity, injustice, or clemency determinations" [hereinafter "Wilkie Memo"].

49. The Wilkie Memo provides standards and principles to guide Boards in application of their equitable relief authority to upgrade discharges and provide broader records-correction relief based on "equity, injustice, and clemency determinations." The Wilkie Memo states, in relevant part, that "[i]n determining whether to grant relief on the basis of equity, injustice, or clemency grounds, BCM/NRs shall consider the prospect for rehabilitation, external evidence, sworn testimony, policy changes, relative severity of misconduct, mental and behavioral health conditions, official governmental acknowledgement that a relevant error or injustice was committed, and uniformity of punishment."

50. After considering all of the case materials and relevant authority, the board determined that Plaintiff's records contained an error or injustice and unanimously voted to grant full relief, determining that

> the evidence presented is sufficient to warrant a recommendation for relief. As a result, the Board recommends that all Department of the Army records of the individual concerned be corrected by:

    a.  revoking his discharge in lieu of trial by court-martial;

    b.  showing he continued to serve until he reached 20 years of active duty service;

    c.  showing he was retired by reason of sufficient service for retirement; and

    d.  paying him any active duty pay and allowances and any retired pay he is due as a result of these corrections.

51.  Based on its review of all record materials, the Board's rationale for granting such relief is as follows:

> The Board considered the length of the applicant's service, his outstanding performance during that service, and the circumstances leading to his resignation in lieu of trial by court-martial. The Board also considered the transcript of the Article 32 hearing and statements given to CID. While the Board agreed that the applicant made some significant errors of judgment, the Board found the final outcome in his case to be overly harsh. In particular, the Board noted the applicant's first spouse admitted that she allowed him to maintain the belief that they had divorced, even though she knew that was not true. The Board agreed that the issues in this case could have been resolved in a manner more favorable to the applicant and noted that he did take action to rectify his errors in judgment, though too late to avoid the situation into which those mistakes led him.
>
> By a preponderance of the evidence, the Board determined clemency is appropriate in this case, and recommended that the applicant's record be corrected to show he was retired honorably after completing 20 years of active duty service, with payment of any active duty pay and allowances and retired pay he is due as a result of this correction.

52.  On June 9, 2021, the then Acting DASA(RB), Jackie R. Tillery, issued a memorandum stating that he had "reviewed the evidence presented, findings, conclusions, and Board member recommendations" and found "there is sufficient evident to grant partial relief." Mr. Tillery then directed that Plaintiff's records be corrected "by amending the DD Form 214 for the period ending 2 February 2001 as follows: item 24 (Character of Service) – 'Under Honorable Conditions (General)[.]'"

53.  ABCMR regulation states that "[t]he Secretary of the Army may direct such action as he or she deems proper on each case. . . . If the Secretary does not accept the ABCMR's

9

recommendation . . . or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision." 32 C.F.R. § 581.3(g)(3)(i).

54. Although Mr. Tillery characterized his decision as a grant of partial relief, he rejected the ABCMR's unanimous recommendation that Plaintiff's records be corrected to reflect constructive service credit and longevity retirement.

55. Mr. Tillery is no longer the Acting DASA(RB).

56. The Army subsequently issued a corrected DD-214 that reflected a change to the character of service from UOTHC to "Under Honorable Conditions (General)." The corrected DD-214 was added to Plaintiff's official military personnel file.

## V. LEGAL CLAIMS

**Count I: The Acting DASA(RB)'s decision to reject the unanimous recommendations of the ABCMR panel violates the Administrative Procedure Act (APA), 5 U.S.C. § 706 because it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, without observance of procedure required by law, or unsupported by substantial evidence.**

57. The preceding paragraphs are incorporated herein by reference.

58. The Acting DASA(RB)'s June 9, 2021 decision constitutes a final agency action within the meaning of the APA.

59. The portion of the Acting DASA(RB)'s June 9, 2021 decision that rejects the ABCMR's unanimous recommendation for full relief is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, without observance of procedure required by law, or unsupported by substantial evidence.

60. The Acting DASA(RB)'s decision to reject the ABCMR's recommendation for full relief "is owed no deference if it fails to give a reason that a court can measure . . . against the arbitrary

or capricious standard of the APA." *Coburn v. McHugh*, 679 F.3d 924, 929, 400 U.S. App. D.C. 443 (D.C. Cir. 2012) (quotation omitted). Further, decisions that are "utterly unreviewable" are arbitrary and capricious. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514, (D.C. Cir. 1989).

61. Here, the Acting DASA(RB)'s decision to reject a comprehensive, unanimous ABCMR recommendation for full relief under the guise of granting partial relief is wholly conclusory and devoid of any reasoning that a court could measure against the APA standard. It is utterly unreviewable, is owed no deference, and must be declared arbitrary and capricious.

**Count II:   The Acting DASA(RB)'s decision violates federal regulation requiring the Secretary of the Army to issue a statement of the grounds for denial or revision.**

62. The preceding paragraphs are incorporated herein by reference.

63. An agency decision violates the APA if "it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

64. Federal regulations require that "[i]f the Secretary does not accept the ABCMR's recommendation . . . or fashions an action that he or she deems proper and supported by the record, *that decision will be in writing and will include a brief statement of the grounds for denial or revision*." 32 C.F.R. § 581.3(g)(3)(i) (emphasis added).

65. The Acting DASA(RB)'s bare, conclusory statement that "there is sufficient evidence to grant partial relief" clearly does not meet the requirement of a "brief statement of the grounds for denial or revision" because it is entirely conclusory and contains no discernable explanation of the grounds for rejecting the ABCMR's unanimous recommendation to provide records corrections that would have retroactively retired Plaintiff.

## VI.  PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

(A) Hold that the portion of the Acting DASA(RB)'s final decision that rejects the ABCMR's recommendations is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, without observance of procedure required by law, or unsupported by substantial evidence in violation of the Administrative Procedure Act;

(B) Enter judgment in favor of Plaintiff on all counts of this complaint;

(C) Remand the matter to the agency for further actions in accordance with the Court's findings, opinion, and order;

(D) Upon proper application, award attorney fees under the Equal Access to Justice Act; and

(E) Award such other relief as the Court deems appropriate.


Respectfully submitted,

*/s/Brian D. Schenk*

Brian D. Schenk
(MN #0391577)
Midwest Military & Veterans Law, PLLC
400 S. 4th Street, Suite 401-510
Minneapolis, MN 55415
Ph: (202) 557-6570
Email: brian@militaryandveteranslaw.com

Dated:  December 8, 2023